The charge was in the following words, to wit:
WARREN COUNTY COURT — February Term, 1811.
Negro man, Washington, the property of Oliver Fitts, Esq., stands charged that he, the said Washington, on 15 February, 1811, with force and arms, at the county of Warren, in and upon the body of one Martha Beasley (spinster) in the peace of God and the State then and there being, violently and feloniously did make an assault, and then and there the said Martha Beasley, against the will of her, the said Martha Beasley, feloniously did ravish and carnally know, against the form of the statute in such case made and provided, and against the peace and dignity of the State.
WM. MILLER, Attorney for the State.
The finding of the jury was in the following words: (101) "Find the defendant guilty."
The court were of opinion that the causes shown were not good and sufficient, and sentence of death was pronounced upon the slave. His counsel prayed an appeal to the Superior Court, *Page 80 
which was denied. He then moved for a writ of error to reverse the judgment, and this motion was disallowed. Oliver Fitts, the owner of the slave, made an affidavit setting forth the foregoing facts, and applied to his Honor, Judge Henderson, for a writ of certiorari to have the proceedings removed into the Superior Court, and the judge granted the writ, and also a supersedeas; and the case was sent to this Court upon the following points: 1. Whether it was competent for the County Court, at May Term, 1811, to pronounce sentence of death, the conviction having taken place at February term preceding. 2. Whether the writ of certiorari will lie in this case (and this necessarily involved the question, Whether the County Court acted rightly in refusing the appeal prayed for). 3. Whether a trial de novo is to be had in the Superior Court.
Upon the second point the Court were divided in opinion. They were unanimous in the opinion that the County Court had the right of pronouncing sentence of death at May term, and that if a trial was to be had in the Superior Court, it must be a trial de novo.
As to the second point all the judges, except his Honor, Judge Hall, were of opinion that the slave had the right of appealing to the Superior Court from the verdict and judgment in the County Court; and that as the appeal had been denied when prayed for, the writ of certiorari was the proper remedy in the case for the purpose of having the proceedings in the County Court certified to the Superior Court, that a trial de novo might there be had.
I readily agree with my brethren that the County Court next subsequent to that at which a verdict had been rendered against the prisoner had a right to pronounce judgment upon such verdict. I also agree with the counsel for the prisoner that where a slave was tried upon a criminal charge, by a special court created under the act of 1791 or 1793, it was not competent for any other than such special court to pass judgment against him, because such courts only sat from time to time, as occasion required; each court was distinct from the other. Besides, not being courts whose records and proceedings were directed to be preserved, it was impossible for a subsequent court to know with certainty what a former court had or had not done. This is not the case with the county courts. A record is made of all their proceedings, and it may be seen with the greatest certainty what has or has not been done. If so, no mischief can result from one court doing that *Page 81 
which it sees another court has omitted to do, but which it ought to have done. In addition to this consideration, it is to be observed that the county courts have their regular terms throughout the year, and although the individuals who hold them are not the same at different times, yet in contemplation of law each is the same court, and must be so considered as long as the law creating them is in force.
But a strong argument has been attempted to be drawn from the act of 1794, ch. 11, which declares, "that it shall be the duty of the County Court, when sitting on the trial of any slave or slaves, or of three justices when they shall be sitting on such trial, to pass judgment," etc. But let us inquire what was the cause of passing that act. By Laws 1793, ch. 5 (by which the benefit of trial by jury was extended to slaves), the duty of the jury, and of the court under whom they acted, was not distinctly defined; and the act of 1794 was passed for the purpose of pointing out the province of each, and, as I view it, for no other purpose. And although the Legislature (103) have used the words "when sitting on the trial of anyslave," etc., yet I cannot give to these words, when connected with the other words of the act and with other acts passed upon the same subject, the construction contended for: that is, that no subsequent County Court had the legal power to pass sentence against the prisoner Washington, but that that exclusively belonged to the court who presided when the verdict was rendered.
If, then, the court possessed such power, had the prisoner a right to the benefit of an appeal or writ of error? It is with reluctance that I dissent from the opinion entertained by my brethren on this point. I shall endeavor, however, as it is my duty to do, to assign my reasons for this dissent. The first act of Assembly that relates to the trial of slaves for crimes or misdemeanors was passed in 1741, ch. 24. Section 48 of that act empowered three justices of the peace and four freeholders, owners of slaves, upon oath to try all manner of crimes and offenses that should be committed by any slave, etc., at the courthouse of the county, and to pass such judgment upon such offender, according to their discretion, as the nature of the crime or offense should require. The same section also directs the manner in which such special court should be convened, when occasion might require it. The next act passed on this subject was passed in 1793, ch. 5. By this act the benefit of the trial by jury was extended to slaves charged with offenses, "the punishment whereof extends to life, limb or member." It will be of importance to bear in mind that by this act the sheriff is directed to convene a special court, to wit, three justices of *Page 82 
the peace and a jury of good and lawful men, owners of slaves, to try slaves charged with such offenses, provided that the County Court shall not meet within fifteen days from the time of commitment of such slaves. The third act on this subject was passed in 1794, ch. 11, which declares that it shall (104) be the duty of the jury to give a verdict of guilty or not guilty on the evidence, etc.; and on the verdict so given it shall be the duty of the County Court, when sitting on the trial of any slave or slaves, or of three justices when they shall be so sitting, to pass judgment on such slave, etc. The fourth and last act on this subject was passed in 1807, ch. 10. This act repealed all others, which authorized courts to be specially convened for the trial of slaves charged with offenses, and declared that in future all such offenses should be tried at the regular terms of the county courts, under the same regulations and restrictions as by law were then directed.
I have thought it important in this case that all the acts of Assembly on this subject should be brought into view. It has not been contended, nor would the ground be tenable, that an appeal or writ of error would lie from any special court created by act of Assembly, because, in the first place, in none of the acts is an appeal or writ of error spoken of; secondly, because the act of Assembly, commonly called the court law, which declares, "that if either plaintiff or defendant shall be dissatisfied with any sentence, judgment or decree of the County Court, he may pray an appeal," was passed in 1777, long after the act of 1741, which first established the special courts; and, thirdly, because the act of 1777 speaks of appeals and writs of error from the county courts only to the Superior Courts. However, if such special courts should transcend the limits prescribed to them, no doubt there ought to be a correcting power in the Superior Courts, and such power they certainly possess.
But it is said that since the act of 1807, which directs that slaves charged with offenses shall be tried at the regular terms of the county courts, the prisoner is entitled to an appeal or writ of error, because the act of 1777 gives the benefit of an appeal or writ of error to any person, plaintiff or defendant, who may be dissatisfied with any sentence, judgment or (105) decree of the County Court. This seems to be the ground on which the argument for the prisoner rests. With a view to ascertain the meaning of the Legislature, let us examine the acts of 1793 and 1794, before mentioned. By the former, in case a slave were committed within fifteen days before the sitting of the County Court, such slave must be tried by the County Court at its regular term, and not by a special *Page 83 
court. But if such slave was committed to jail more than fifteen days before the sitting of the County Court, the sheriff is directed to convene a special court, to wit, three justices anda jury, etc., as is evident from the act of 1794, which says, "that on the verdict of the jury it shall be the duty of the CountyCourt, when sitting on the trial of any slave or slaves, or of three justices, when they shall be sitting on any such trial, to pass judgment, etc., agreeably to law. The Legislature, in defining the duties of the courts and juries in this act, speak of the county courts as well as the three justices; by which I understand them to mean special courts convened by the sheriff, because it depended on circumstances whether the trial might be in the one court or the other; and I suppose that each court, as to the trial of slaves, possessed precisely the same powers. But if an appeal from the County Court be a matter of right, or if such court is bound to grant a writ of error when asked for, what would be the consequence? A slave is committed to jail for a capital offense more than fifteen days before the sitting of the County Court; another is committed to jail upon a similar charge within fifteen days of that time: with respect to the first, there must be a special court convened; the latter must be tried in the County Court. Is it likely that the Legislature intended the one tried in the County Court should be entitled to an appeal or writ of error and the other should be deprived of this right? By the act of 1741 the trial of slaves was entrusted to a special court, consisting of three justices and four freeholders. By the act of 1793 a jury was (106) substituted in the place of the four freeholders; but in case the slave was committed to jail within fifteen days before the sitting of the County Court, then such County Court was substituted in the place of the special court. It never could be intended that such County Court should, as to the trial of slaves, possess more or less power than three justices, in case they had been convened as a special court by the sheriff, so that the slave tried in the County Court should have more privileges than if he had been tried in a special court. If he could not move his case by way of appeal from the one court, he certainly could not from the other.
But the act of 1807, it is said, gives the right of appeal by implication. Let us examine this act. It declares that all slaves charged with criminal offenses the punishment of which extends to life, limb or member, shall be tried at the regular terms of the County Court, etc., under the same regulations and restrictions as by law there directed. The only effect of this act, and its sole purpose, were to do away with the necessity of *Page 84 
convening special courts. But the same powers which those special courts possessed and exercised, and the same powers which, before the passing of that act, the county courts possessed and exercised, in case a slave was committed to jail within fifteen days of the sitting of such court, were by the act of 1807 transferred to the county courts at their regular terms. The act is express that the trials shall take place under the same rules, regulations and restrictions as by law there directed. The Legislature had some reason for passing this act, and probably it was that greater notoriety might attend the trial, and that impartial justice might thereby be more certain to be administered. But I think the object could not have been to give to the slave so tried a right to appeal. If that had been an object, the Legislature would have so expressed their meaning. It is (107) therefore my opinion that no appeal lay from the special courts created by the act of 1741, continued with some alteration by the act of 1793, or from the county courts, which had jurisdiction to try slaves committed to jail within fifteen days of the time of their sitting, and that the County Court of Warren did right in refusing an appeal in the present case, because they possessed only the same powers and stood precisely in the same situation, as to the trial of slaves, with those courts which preceded them.
Cited: Atkinson v. Foreman, ante, 57.
(108)